GARCÍA ET AL., PLAINTIFFS AND APPELLANTS, *v.* AGUAYO ET AL.,
DEFENDANTS AND APPELLEES.

APPEAL from the District Court of Ponce in an Action of
Nullity, Etc.

No. 2796.—Decided July 28, 1923.

RES JUDICATA—LITIS PENDENTIA.—In an action wherein a judgment in another ac-
tion is pleaded as *res judicata* and held to be void because it was rendered
without giving the parties their day in court, if the case is remanded for
a new trial the plea of *litis pendentia* can not be substituted for that of
*res judicata* for that reason alone.

INHERITANCE—LEGITIMATE CHILD—FILIATION.—An action wherein the plaintiff,
alleging that he is a legitimate child on the basis of the marriage of his
parents, prays for an acknowledgment of his rights in the estate of one of
them is not an action of filiation.

PAROCHIAL RECORDS—DESTRUCTION OF RECORDS—RECONSTRUCTION OF RECORDS—
MARRIAGE CERTIFICATE.—The parochial records having been destroyed by fire
and the bishop of the corresponding diocese having ordered the reconstruc-
tion of the book of marriage certificates so destroyed, a certified copy of
any of its entries issued by the ecclesiastical official having the custody of
the reconstructed book is valid.

ID.—CERTIFICATES OF BAPTISM OR MARRIAGE—EVIDENCE.—Although marriage or
baptismal certificates are positive evidence only of the ceremonies which
caused their execution, yet, in proper cases, the statements therein contained
have some probative value.

ID.—MARRIAGE CERTIFICATE—EVIDENCE.—Although a certificate of marriage is-
sued by a competent functionary is sufficient of itself to prove the marriage,
parol evidence of such marriage is admissible, especially in a case in which
the records have been reconstructed and the validity of the certificate is
challenged by the adverse party.

The facts are stated in the opinion.

*Mr. L. Muñoz Morales* for the appellants.

*Messrs. J.* and *M. Tous Soto* for the appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of
the court.

For about twenty years the plaintiff in this case has
been contending for an acknowledgment of her rights as
the legitimate daughter of Juan García Villaraza and his
wife, Manuela Fernández y Rodríguez. *Aguayo et al.* v.
*García,* 11 P. R. R. 263; *García* v. *Aguayo et al.,* 29 P. R.
R. 954.

The plaintiff alleges in her complaint that Juan García

Villaraza died in Pará, Brazil, on April 27, 1899, while married to defendant Josefa Aguayo, leaving as his sole heirs his daughter, the plaintiff, his other daughter, defendant Graciela García y Aguayo, and his widow, said defendant Josefa Aguayo. That her father owned property and died intestate, his last domicile being Ponce, Porto Rico.

After these general allegations the plaintiff set up as her first cause of action that defendant Josefa Aguayo, individually and as the representative of her daughter Graciela, notwithstanding her knowledge that the plaintiff was a legitimate daughter of her deceased husband, petitioned for and obtained from the District Court of Ponce a declaration that they were the sole heirs of Juan García and recorded the properties of the estate in their names. As a second cause of action she alleged that as a result of the acts set forth in the first count the defendants had caused the plaintiff damages amounting to more than $20,000. And as a third cause of action the plaintiff specified the real property acquired by defendant Josefa Aguayo with the rents produced by the estate of Juan García Villaraza.

By virtue of these allegations the plaintiff prayed that the declaration of heirship and the records in the registry be adjudged null and void; that it be adjudged that the persons entitled to the estate are the plaintiff and the defendants; that a partition of the estate be ordered, and that the defendants be adjudged to pay her the sum of $22,800 and the costs.

The defendants answered by admitting the fact of the death of García, denying that the plaintiff was his legitimate daughter and alleging that they were his sole heirs. It was stated in the answer that the defendant knew of the existence of the plaintiff who was excluded from the declaration of heirship on the advice of an attorney, and that in order to give her an opportunity to establish her right in the estate an action was brought against her so that the court might

declare who were the sole heirs, which the court did in a judgment of April 25, 1908, in favor of the defendant and her daughter Graciela. The damages were denied. *Res judicata* was first set up as a defense, and then it was alleged that an action was pending between the same parties. It was averred that the share of defendant Graciela in the estate had been sold to Roque Pérez and that he was a third person, and finally that the action of filiation which the plaintiff might have brought was barred by limitation.

The case was first decided by the District Court of Ponce against the plaintiff mainly on the ground that the rights of the parties had been finally adjudicated. On appeal the judgment was reversed by this Supreme Court and the case was remanded for a new trial. *García* v. *Aguayo et al.*, 29 P. R. R. 954. In the course of the opinion it was stated that as the judgment relied upon as *res judicata* was rendered without giving the parties an opportunity to be heard, it was an absolute nullity. It was undoubtedly because of this holding that when the case was remanded to the district court the defendant set up the plea of *litis pendentia.*

After the new trial the court again dismissed the complaint and the plaintiff thereupon took the present appeal.

In order to make the situation clear it may be said that besides the death of García it was also proved beyond all doubt that he left property and that the defendants were declared by the court to be his sole heirs and as such they recorded the property, took possession of it and used its rents and profits. For the same purpose we will say that in our opinion the plea of *litis pendentia* and the questions of third person and limitation of the action are without merit. The first because the action decided by the judgment of April 25, 1908, was terminated. That the judgment was collaterally adjudged, to be null and void later is of no importance. The second because as Pérez is not a party to this suit he can not be affected by a judgment against him. And the

third because the plaintiff has not brought an action of filiation in this case. She bases her action on the marriage of her parents.

Let us now consider the main question of the case, viz: Did the plaintiff prove the marriage of her parents? Let us see.

The first evidence offered by the plaintiff was a document which is transcribed in the opinion of this court in *Garcia* v. *Aguayo et al.*, 29 P. R. R. 954, 957.

The defendant objected to the admission of that document in the following words:

"We are going to make a lengthy objection to this document and, therefore, will dictate it to the stenographer. It is in fact the most important question in the case. We object to the admission of this document, first: Because it is not a transcript of the original marriage certificate appearing in the corresponding parochial archives and issued by the officiating priest at the time of the marriage and in the performance of his duty in the course of his employment or ministry. Second: Because the said original entry of the marriage in the corresponding book did not exist at the time the certificate was issued, and there is no proof that it existed at any time and had disappeared or was destroyed, which is the only case in which secondary evidence could be admitted, in accordance with sections 154 and 350 of the Civil Code and subdivision 1 of section 24 of the Law of Evidence; therefore, it is not admissible. Third: Because the alleged reconstruction of the entry in the marriage register was not made by competent authority, in this case the Bishop, or in the proper proceedings, but is a new entry made in a provisional marriage register on October 2, 1918, after judgment had been entered in a previous suit between the same parties and upon the same issues as the present one, which judgment was rendered on April 25, 1908, and a few days before the commencement of this action on November 7, 1918, the said document having been prepared in a foreign country by a priest who neither performed nor was present at the alleged marriage and who was not the parish priest of Guiera de Melena at the time, without the signature of any witness to the said marriage or other person who attended it, without mentioning the source of information of the priest who reconstructed the document, without hearing the

parties interested or giving them an opportunity to be heard and without showing the authority of the said priest to make the new entry. Fourth: Because the said document is not only hearsay evidence of the worst kind but also self-serving evidence prepared after this litigation between the parties involving the very matter sought to be proved by this evidence recently prepared (on October 2, 1918), and the said certificate was issued on the day following its preparation, or October 3. Fifth: Because the certified copy of the said document is not in form according to subdivision 8 section 69 of the Law of Evidence. Sixth: Because on the day when the marriage is said to have been performed there was in force in Cuba the law of civil register and from that date nothing could be admitted to prove a marriage but the certificate of the civil register and even if the marriage had been performed before the said law went into effect, in accordance with the statute then in force the entries of the parochial records should have been transcribed into the books of the civil register.''

The court held that the document was ''not admissible because of the manner in which the record was reconstructed and the manner in which the record was certified to by the consul.''

The appellants maintain in their brief that the document was admissible as primary evidence. It seems well to quote the reasoning in support of this contention. It is perfectly condensed as follows:

''The plaintiff-appellants now maintain that the said document is admissible: (*a*) Because it is a certified copy of an original document contained in the parochial records of the Parish of Guiera de Melena. (*b*) Because that certificate was issued by the official entrusted with the custody of the original. (*c*) Because the said original was prepared by virtue of a decree made by competent authority because the old records of the church had been destroyed by fire. (*d*) Because the said decree authorized the proceedings in which all of the necessary data and evidence would be brought for the reconstruction of the original entries destroyed by fire. (*e*) Because the evidence and necessary data for the reconstruction of that record must appear in the general record of the proceedings and not in each of the particular entries. (*f*) Because the said document was also authenticated by competent authority, it being

stated that the person who issued the certificate was the person who had the custody of the original document. (*g*) B'ecause it also appears to have been duly authenticated by the American Consul in the Island of Cuba and such authentication, in our opinion, was made in substantial conformity with the provisions of subdivision 8 of section 69 of the Law of Evidence.

"We again insist that the said document is not secondary evidence but primary evidence according to sections 7 and 24 of the Law of Evidence, because the original from which the certified copy was made has not been lost or destroyed.

"In this case the parochial archives in which the marriage entry appeared were destroyed and by means of the corresponding proceedings the said entry was reconstructed and entered in the corresponding book, giving the date of the episcopal order authorizing the new entry; and the said new entry is the original document to which the certificate refers.

"On the other hand the said document is a public and authentic document issued in accordance with the canonical law."

In our opinion the district court erred in refusing to admit the document and its error is still more apparent upon consideration of the testimony of Florencio García, a priest, who is learned in the canonical law and who was engaged not by the plaintiff but by defendant Aguayo to ascertain personally whether the reconstruction of the marriage entry of the plaintiff's parents had been made in accordance with the canonical law. He testified that he knew personally the parish priest Luciano García and that he saw the original entry in the supplementary book prepared by reason of the fire that destroyed the archives during the last war between Cuba and Spain. The witness was not permitted to give an opinion or to describe the record from which the reconstructed entry had been copied, but notwithstanding the stubborn opposition of the defendants and the attitude of the court, his testimony shows the existence of the record that he saw.

It is argued that only the bishop of the diocese to which the parish belonged could reconstruct the entry. We en-

tirely agree that the bishop is the highest authority of the diocese and the only one who could order the reconstruction of parochial archives that had been destroyed, and it so appears from the document involved in this case. It is stated therein: "And in compliance with the decree of the Right Reverend Bishop of the Diocese dated June 23, 1896, the archives of this church having been destroyed by fire on January 5, 1896, I, Rev. Luciano García y González, Acting Priest of the Parish, affix my signature thereto this second day of October, 1918." And the certified copy issued by the parish priest was sent to the bishopric and there his signature was legalized by the official with power to do so.

Neither party has cited, nor have we been able to find, the exact text of the canonical law providing for the procedure to be followed for the reconstruction of parochial archives destroyed by fire or by any other cause, and that being the case it must be presumed that the order of the bishop was made in accordance with the law and was in the same manner complied with. When the supplementary book was formed and the entries destroyed were newly made in it, its entries took the character of originals and the official in whose custody they were could validly issue certified copies. The burden was on the defendants to show the invalidity of the document, if it was really so under the facts and the law. *Prima facie,* we repeat, it is valid and should have been admitted and given all the force that law and jurisprudence give to documents of that kind.

In the case of *United States* v. *De Vera,* 28 Phil. Rep. 105, the Supreme Court of the Philippine Islands held, to quote the syllabus, that:

"As the Roman Catholic Church is a juridical entity (Barlin vs. Ramírez, 7 Phil. Rep., 41) and as the marriage registers kept in the parishes of the said church belong, not to the priests in charge of these parishes, but to the said entity, the presentation of the entry of a marriage, and of the book containing such entry,

by the priest in charge of the parish at the time of the trial, and his testimony with respect to the authenticity of the document and the truth of the facts therein set forth, produce the same effects as if such presentation had been made and such testimony had been given by the priest who solemnized the marriage and signed the entry, inasmuch as they relate to an act performed by a representative of that juridical entity in the exercise of his ecclesiastical duties and recorded in a book of the said entity during the course of its business.''

But there is more in this case. Not only was the said certificate and the testimony of García, the priest, presented, but there were offered also two other documents and the testimony of several witnesses.

The documents were the baptismal certificate of the plaintiff and the certificate of marriage of the plaintiff's father to defendant Aguayo. In the former it was stated that the child Elvira was ''the legitimate daughter of Dr. Juan García, of Málaga, and Manuela Fernández, of Havana, both being residents of this parish.'' In the latter it was stated that the father of the plaintiff was ''the widower of Manuela Fernández who died * * *.'' The first document is dated December 8, 1884. The second November 28, 1891.

It has been repeatedly held that documents of that kind are sufficient proof only of the act that caused their execution, but it can not be denied that in proper cases the statements contained in such documents have a certain probative force.

In the case of *Ex Parte Otero et al.,* 27 P. R. R. 315, after a careful consideration of the question, the following doctrine was laid down:

''Registration of baptism entered in the parochial records by the priests in accordance with the canonical law before the adoption of the civil register in Porto Rico, have the character of public documents and are *prima facie* evidence of the filiation of the baptized child as to the person who is mentioned as natural mother in the

registry. In accordance with this doctrine, in such cases the natural filiation becomes established although from the record of baptism the express acknowledgment by the mother should not appear, as required for the filiation as to the natural father."

The rule thus laid down was applied in *Tardi* v. *Tardi,* 30 P. R. R. 209, 215.

The Supreme Court of the Philippines in the case of *Sison* v. *Ambalada,* 30 Phil. Rep. 118, expressed itself as follows:

"The legal presumption is that a man and woman living together as husband and wife have entered into a lawful contract of marriage (Code Civ. Proc., sec. 334, No. 28) ; but presumptions established by law may be destroyed by proof to the contrary (Civil Code Art. 1251). Proof to the contrary rests upon the defendant, and he has adduced none whatever, for proof to overcome the legal presumption is not constituted by absence of the marriage certificate in the books of the parish of Balayan, wherein it is seen that other entries as important as that of the marriage in question are lacking. Lack of record of an act or fact in certain books of registry is not *per se* proof of the non-existence of the fact or act, outside of the cases where the law specifically requires as essential evidence the record itself or the inscription of the fact or act to be proven. A particular point in this instance in support of the presumption established by law is that Julián Ambalada earnestly insists on his averment that from his infancy he always lived with Father Gabino de los Reyes until the death of the latter, who was the parish priest of Balayan. It has been proven in an efficacious manner, and is a fact admitted by the litigating parties, that Father Gabino de los Reyes was a priest of acknowledged probity, and as such parish priest of Balayan would not have falsely attested the entry in the church records of his parish of the baptism of the two daughters of Julián Ambalada and Modesta Afable, both named María Ambalada, one born in 1873 and the other in 1875, by registering them as legitimate daughters and issue from the legitimate marriage of Julián Ambalada and Modesta Afable. (Exhibits A and D.) From his own knowledge, according to the previous facts established by the defendant himself, and convinced in his own mind, he must have made those entries, which in assuring the legitimacy of such daughters took for granted at the same time the legitimacy of their parents' marriage.

"Whatever may have been the reason for the absence of record, the facts established herein all conclusively support the marriage affirmed in the judgment appealed from."

In the course of the opinion in *United States* v. *De Vera, supra,* the Supreme Court of the Philippines said:

"In the case of Blackburn vs. Crawford's Lessee (3 Wall., 175), where the appellant objected to the admission in evidence of an entry made in a baptismal register because the minister or priest who had made the said entry was still living and was within reach or could be called and should have been examined with regard to the point at issue, the court said:

" 'They (the appellants) proved that the book was the baptismal register of St. Patrick's Church, in the city of Washington; that the ritual and usage of the church required such a register to be kept, and baptisms to be entered in it; and that this entry was in the handwriting of the Rev. John P. Donelan, who, at this date, was assistant pastor of the church. The plaintiff in error objected to the evidence as inadmissible for any purpose. If admitted, he claimed that it was competent to prove only the fact and date of the baptism. The court overruled both objections and admitted the entry as evidence, "as well of the fact of the said baptism, and of the date thereof, as of the fact that the said George T. Crawford was baptised as the lawful child of Thomas B. Crawford and Elizabeth Taylor, his wife."

" 'The register was admissible upon the ground that the entries in it were made by the writer in the ordinary course of his business.'

"Bishop, in his aforecited work (vol. 1, par. 1013), added with reference to the decision above mentioned: 'The same rule, it was deemed, would be equally applicable to records kept, pursuant to ecclesiastical rule, within any other religious denomination.' "

We will say briefly that the oral evidence tended to show that when the plaintiff's father married defendant Aguayo the portrait of the plaintiff's mother continued to hang on the wall in the living room of the house. Considering our social customs, this evidence was important because it is inconceivable that the portrait of a mistress would be kept in a prominent place in the home of a lawful wife. The oral evidence also tended to show that the plaintiff's parents

were known to be living together for more than five years and attended social functions together in Havana. Yet the court, committing, in our opinion, a manifest error, did not allow the witnesses to testify to all that they knew, the court being of the opinion that no secondary evidence of the marriage of the plaintiff's parents was admissible. What we have indicated is deduced from statements that the witnesses could not be prevented from making.

The case having gone off on a motion for nonsuit, the district court not having had an opportunity to weigh the evidence, as it rejected the marriage certificate of the plaintiff parents, gave no value to the baptismal certificate of the plaintiff and the' certificate of the second marriage of her father and did not permit the witnesses to testify, and it being possible that the adverse party might perhaps be able to produce evidence to controvert that introduced by the plaintiff, it seems that the proper course is to remand the case for a new trial in accordance with the principles laid down in this opinion, in the hope that this old controversy will be finally and fairly decided. And it is so ordered.

*Reversed and remanded.*

Justices Hutchison and Franco Soto concurred.
Justices Wolf and Aldrey concurred in the judgment.

### CONCURRING OPINION OF MR. JUSTICE WOLF.

This is a case of a daughter, reputed for years to be legitimate, who is made to attempt to prove or undertakes to prove the marriage of her parents.

The complainant, to prove the said marriage offered in evidence the certificate which is transcribed on pages 957 *et seq.* of Vol. 29 of our reports. In this decision we held that the competency of the document should be passed upon by the court below. The case was sent back and after a full hearing, the court, in my opinion, properly refused to

admit the document. Various are the alleged defects. I
incline to the view that the consular certificate was sufficient,
but I am also convinced that the document does not show the
proper authority. The alleged marriage certificate purports
to be a reconstructed document, namely, it is a certificate is-
sued in October, 1918, of a parish priest which recites that the
records of the church were burned on January 5, 1896, and
that conformably to a decree of the bishop dated June 23,
1896, the said parish priest affixes his signature. The
marriage is alleged to have taken place in 1883. The decree
of the bishop to which reference is made is a general one
and the bishop does not appear at all to have intervened in
the reconstruction of the present parish archive issued in
1918.

So far as my researches go it is canonical or ecclesiastical
law and we have so pointed out in *Garcia* v. *Garzot,* 18
P. R. R. 835, that the bishop is the church official who
speaks for the church and that his functions when legal or
quasi-legal combine both the duties of a judge and secretary.
This is further indicated by Pollock & Maitland, History of
English Law, Vol. 1, p. 110, and by the various encyclopedia
articles under the title ''bishop.'' It is his mind that must
be satisfied that a marriage certificate merits reproduction.
He is like a chancellor in a court of equity. While he may
commission others to hear it he must be satisfied with the
evidence and certify to the truth of it.

A general delegation of authority by the bishop is not
to my mind sufficient. He must decide each case. Further-
more, in the instant case there is absolutely nothing in the
document transcribed to show that the bishop gave such gen-
eral authorization to the parish priest. The nature of the
general order of 1896 is not set forth. It may have been
a general order giving the parish priest the right to certify
to church records.

Because a parish priest may certify to a marriage record

raises no presumption that a destroyed record has been duly reconstructed. When an officer certifies, his authority to make the certificate must be shown. Ordinarily we assume the authority of certain officers, like clerks of courts, because we are aware more or less of their general authority. Nevertheless, I venture to assert without special citation that before a particular officer may certify to the existence of a record, the matters certified to should fall within the scope of his duties. In this case all we had before us was the certificate of the existence of a document. There was no showing, in my opinion, that it was duly reconstructed.

In reversing this case at the previous hearing we said we were disposed to give the appellant an opportunity to prove the marriage *aliunde.* We said, ''We are not so sure that there may not be other evidence of reputation and the like which may tend to supplement the alleged marriage certificate, if it be in fact defective.'' The appellant at the trial took this statement literally and offered some alleged suppletory evidence of reputation or the like to show the alleged marriage of her parents. The court refused to admit any part of it. The appellant excepted but did not assign error.

In the form in which the evidence was offered perhaps the court was right. The appellant was relying on the marriage certificate. The appellees were objecting, not only to the competency of the certificate, but also to its probatory value, and the appellant was offering suppletory proof. The whole principal issue, as presented, was on the marriage certificate and evidence to support it. The appellant did not attempt to rely on the presumption contained in section 102, par. 29, of the Law of Evidence, as follows:

''That a man and woman deporting themselves as husband and wife have entered into a lawful contract of marriage.''

This would be an independent way of attempting to prove the marriage. Necessarily this presumption is re-

buttable and the fact of reputation should always be clearly established. Also if the parents of Elvira were holding themselves out as married at a time that they had an adulterous relation, such a fact would help destroy the presumption of marriage.

Normally a court of appeals will leave the parties to look after their own rights, but courts have a special interest in supporting and maintaining the marriage relation. Here is a case where Elvira García ·may or may not be legitimate. The issue has not been determined. She simply failed in the proof offered and we feel that the marriage *vel non,* even if established by a presumption, should be passed upon by the court. The pleadings in this case are not limited to the proof of the actual marriage in Cuba, although the appellant limited herself to that at the trial. Of course if the appellant failed by a preponderance of the evidence to establish that her father and mother deported themselves as husband and wife, or what is tantamount, the presumption was seriously impugned.

Therefore, under the broad powers conferred upon this court and in the interest of justice I am entirely in accord with the reversal of the case and the award of a new trial.